IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| VICTOR SMITH,          ) | |
| Plaintiff,             ) | |
| vs.                    ) | Case No. 3:05-cv-1186-MEF |
| EURO-PRO MANAGEMENT SERVICES, INC., ) | |
| Defendant.             ) | |

## PLAINTIFF'S BRIEF IN SUPPORT OF HIS MOTION FOR LEAVE TO AMEND COMPLAINT AND SUPPORTING AFFIDAVIT

Comes now the Plaintiff and, in support of his Motion to Amend the Complaint, files the attached Affidavit of John I. Cottle III, attorney for Plaintiff in this case, and submits this Brief in support of the Motion for Leave to Amend.

### FACTS

Plaintiff filed suit on December 19, 2005, alleging employment discrimination against three named Defendants: Euro-Pro Operating, L.L.C.; Euro-Pro Management Co. Corp.; and Stanpro-EP Corp. Plaintiff set out that he was suing all Defendants because he was uncertain which of the three Defendants were the Plaintiff's legal employer at the time of the events referred to in the Complaint.

Defense counsel, Warren B. Lightfoot, Jr., filed an Answer to the Complaint on January 9, 2006, responding on behalf of the three named Defendants. The Answer stipulated that Euro-Pro Management Services, Inc., had been the Plaintiff's employer at the time of the alleged discrimination and that this entity had been improperly designated

in the Complaint as Euro-Pro Management Co. Corp. Mr. Lightfoot's Answer treated Euro-Pro Management Services, Inc., and Euro-Pro Management Co. Corp. as the same entity, and indeed, they are in fact the same entity, and the parties have treated them as such since the filing of Mr. Lightfoot's Answer.

On February 8, 2006, this Court entered a Uniform Scheduling Order setting various cutoff dates and deadlines. Section 4 of the Scheduling Order provided as follows:

> Any motions to amend the pleadings and to add parties shall be filed on or before April 24, 2006.

Counsel for Plaintiff read this cutoff date as a date applying only to amendments which added parties to the litigation. Plaintiff's counsel notated his calendar accordingly.

When Plaintiff's counsel reviewed the Defendant's Answer, he noticed the discrepancy between the Complaint and Answer regarding the name of the entity that the Answer acknowledged was the Plaintiff's employer. Upon reviewing the Answer, counsel checked the website of the Alabama Secretary of State to see if an entity by the name of Euro-Pro Management Services, Inc., was listed as a corporation qualified to do business in Alabama. There was no listing on the Alabama Secretary of State's website of a corporation named "Euro-Pro Management Services, Inc." There was a listing on that site, however, for a company identified as Euro-Pro Management Company Corp.

When Plaintiff's counsel initially considered the discrepancy over the employer Defendant's proper name, he determined to seek discovery on the issue prior to amending the Complaint. Because he had read the April 24, 2006, deadline in the Court's Scheduling Order as pertaining only to amendments that added new parties to the litigation, he did not think it essential to immediately seek discovery on this issue, as any

amendment to correct a misnomer in the Complaint would not add new parties or claims. The discovery cutoff under the Scheduling Order did not expire until February 8, 2007. Being unusually busy at the time the Defendants' Answer came in, counsel made the decision to put off commencement of discovery, as it did not seem that there would ever be a problem amending the Complaint to straighten out what was essentially a clerical error.

On May 24, 2006, the Defendant's counsel took the deposition of the Plaintiff, Victor Smith. Subsequent to that deposition, Plaintiff's counsel reviewed the pleadings in preparation for drafting his discovery requests to Defendants. At that time, and upon further reflection on the issue of the proper name of the employer Defendant, Plaintiff's counsel concluded that discovery was not necessary because the Defendants had stipulated by way of their Answer that the Plaintiff's employer was Euro-Pro Management Services, Inc. Counsel therefore decided to forego discovery on this issue and accept the allegations of the Answer concerning the proper name of the party who employed the Plaintiff. At that point, counsel filed the proposed Amendment, together with the Motion for Leave to Amend, that is now before the Court. This amendment does not seek to add new parties, nor does it make any new claims. It is simply an attempt to dismiss parties improperly named as Defendants and to correct a clerical error in how one party was designated in the original Complaint.

On June 1, 2006, this Court entered an Order requiring the Plaintiff to submit a brief and show good cause why the amendment should be allowed. Plaintiff now submits this brief, addressing that issue.

## ARGUMENT

There is good cause for modifying the Scheduling Order in this case to allow for the Amendment now before the Court. The deadline in the order was violated because of a good faith misunderstanding by Plaintiff's counsel, not because of lack of diligence of intentional disregard of the order. The amendment Plaintiff seeks to make does not add new parties, nor add or modify any claims made in the original Complaint. The amendment seeks only to correct a misnomer in the name of an entity which has already filed an answer, is properly before this Court, and admits in its answer that: (1) it is one and the same entity as the misnamed entity in the Complaint, and; (2) that it employed the Plaintiff at the time of the alleged discrimination. The amendment merely seeks to correct a misnomer that both parties now acknowledge existed in the Plaintiff's original pleading. Allowing the amendment in this case will cause no prejudice whatsoever to any party. Further, allowing the amendment would be in accord with the guidance of Federal Rule of Civil Procedure 1, providing that the Rules are to be, "construed and administered to secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Allowing the amendment would promote a just result – Plaintiff's claim proceeding in accord with what the parties have already effectively stipulated to – without resulting in any delay or added expense. Not allowing the amendment could conceivably inject new issues into the case and require discovery into areas where there would be no need to venture, were the amendment allowed. All things considered, allowing the amendment is the just and proper thing to do in this case.

**I. The Plaintiff's noncompliance with the Scheduling Order was the result of a good faith misunderstanding on the part of Plaintiff's counsel and not the result of lack of diligence.**

As set forth in his affidavit, Plaintiff's counsel read paragraph 4 of the Scheduling Order to impose a deadline only for amendments to the pleadings that sought to add parties, and noted his calendar accordingly. Plaintiff submits that the verbiage of the paragraph, "…to amend the pleadings and to add parties…" could reasonably be interpreted to apply only to amendments that added new parties to the litigation. In retrospect, Plaintiff's counsel's interpretation of the language of paragraph 4 was not the most careful reading of the order. Still, it is not a totally unreasonable construction. Given that the misunderstanding was made in good faith, Plaintiff suggests that the Court ought to apply the standards of Rule 15 in determining whether to allow the amendment. Because the amendment does not make substantive changes either to the claims or the parties, and because it only corrects the name of a party already before the Court, there is no good reason not to allow the amendment. The nature of the amendment itself, which was only filed so that the Complaint would conform to the assertions of Defendant's Answer, is enough, Plaintiff submits, to establish the good cause necessary to allow the amendment. Combined with Plaintiff's counsel's good faith misreading of the deadline, good cause to allow the amendment seems well established.

**II. Allowing the amendment will only serve to correct a clerical error and will not result in any substantive changes to the claims being made or the parties being sued.**

The proper defendant in this case is the entity that employed the Plaintiff at the time of the alleged discrimination. When Plaintiff's counsel filed the initial complaint, he named three distinct entities as that potential employer. Defendants' counsel answered the Complaint on behalf of Euro-Pro Management Services, Inc., indicating that this was the same defendant referred to in the Complaint as Euro-Pro Management Co. Corp., and that this was the entity that had employed the Plaintiff. Plaintiff's counsel then checked the website of the Alabama Secretary of State to determine if Euro-Pro Management Services, Inc., had qualified to do business in Alabama. The Secretary's website does not list an entity identified as Euro-Pro Management Services, Inc. It does, however, list a company identified as Euro-Pro Management Co. Corp. (See website at: *www.sos.state.al.us/business/corporations.aspx*) Plaintiff's counsel initially determined to conduct discovery regarding this discrepancy in the name of the entity. As set forth in his affidavit, he did not commence discovery immediately because he did not believe the deadline of the Scheduling Order applied to amendments that did not add parties, and any amendment necessary to correct a misnomer in the Complaint would not involve adding a new party. Later, when Plaintiff's counsel reviewed the file in preparation to commence discovery, he reasoned that the Defendants' Answer constituted a stipulation and admission that the proper party was Euro-Pro Management Services, Inc., that Euro-Pro Management Services Inc. was properly before the Court, having filed an answer, and that further inquiry into the matter of the Defendant's correct name was unnecessary. At that point, Plaintiff's counsel filed for leave to amend in order to "clean up" the Complaint so that it conformed to the Defendant's Answer.

It is important to note a few major distinctions between the present case and the case of *Sosa v. Airprint Sys., Inc.,* 133 F.3d 1417 (11th Cir. 1998) which this Court cites in its most recent order. In *Sosa*, the Plaintiff attempted to amend his Complaint after the amendment deadline of a Scheduling Order so as to add an entirely new party defendant. The amendment also appears to assert new claims and legal theories against this new defendant. The amendment in *Sosa* was certainly not filed for the mere purpose of correcting a simple misnomer. There is also a finding by the Court that "Sosa's failure to comply with the Court's scheduling order resulted from a lack of diligence in pursuing her claim." *Sosa v. Airprint Sys., Inc.,* 133 F.3d 1417, 1419 (11th Cir. 1998). Such lack of diligence is not present in this case. The discovery deadline in the present case does not expire until February 8, 2007, and both parties have commenced discover in more than ample time to meet that deadline.

It is also important to note that the proposed amendment in the present case is purely a cosmetic modification, offered to clear up a discrepancy between the Complaint and Answer. There is a strong argument to be made that the amendment is not necessary at all, and that it makes no substantive difference whether it is allowed or not. The entity identified as Euro-Pro Management Services, Inc., has, through counsel, filed an answer in which it admits that it was the employer of the Plaintiff. The answer further admits that Euro-Pro Management Services, Inc., is one and the same entity as the entity identified in the Complaint as Euro-Pro Management Co. Corp. Therefore, Euro-Pro Management Services, Inc., is properly before the Court and has stipulated that it was the employer of the Plaintiff at the time of the alleged discrimination. Even if the Plaintiff's amendment is disallowed, it is difficult to see how such disallowance would have any material affect on

how this case proceeds. The amendment merely cleans up a matter that both parties now agree on and cures a misnomer in the Complaint. This, Plaintiff submits, constitutes good cause to allow the amendment.

**III. Allowing the proposed amendment would be in accord with Federal Rule of Civil Procedure 1, requiring rules to be "construed and administered to secure the just, speedy, and inexpensive determination of every action."**

**A) If Plaintiff's right to have his case decided on the merits were in any way jeopardized by the disallowance of the amendment, this would constitute an unjust result in contravention of FRCP 1 and the clear intent and spirit of the Federal Rules of Civil Procedure.**

While Plaintiff contends that the amendment is purely cosmetic and that its disallowance is unlikely to affect the outcome of the litigation, it is at least conceivable that the disallowance of the amendment might affect Plaintiff's ability to have his case decided on the merits. If, for example, Defendants attempted to amend their Answer so as to deny that the proper Defendant is rightly before the Court, this could result in the Plaintiff being left without a proper Defendant in the case. While this possibility seems remote, it is often difficult to foresee the varied procedural twists litigation will take on its way through the system. Accordingly, the better practice seems to be for Plaintiff to seek leave to make the proposed amendment.

The spirit of the Federal Rules of Civil Procedure dictate that this amendment ought to be allowed. The Rules are designed to be flexible enough to allow substantial justice to be done in any given case. *Horwitz v. Food Town, Inc.*, 241 F. Supp 1 (E.D. La.

1965) The intent of the Rules is that controversies be settled on their merits rather than dismissed on technical grounds in a manner that deprives litigants of the chance to bring their cases to trial. *Fierstein v. Piper Aircraft Corp.*, 79 F. Supp 217 (M.D. Pa. 1948). The old Fifth Circuit stated the proposition plainly: "The Rules of Civil Procedure clearly indicate a general policy to disregard technicalities and form, and to determine the rights of litigants on the merits." *Fakouri v. Cadais,* 147 F 2d 667, 669 (5th Cir. 1945). As has been pointed out above, allowing this amendment causes no prejudice, no added expense, and no delay. There is no just reason not to allow it. This, in itself, is sufficient good cause to modify the Scheduling Order to allow the Amendment.

**B) Not allowing the amendment will potentially create new legal issues that could increase the expense to both parties and prolong the litigation unnecessarily.**

Conceivably, the Court's not allowing the amendment may result in the parties having to spend added time and expense in pursuing discovery that would be otherwise unnecessary. Such could also inject additional issues into the case. If, for example, the amendment is disallowed, Plaintiff may find it necessary to explore why the entity, Euro-Pro Management Services, Inc., is not registered as a foreign corporation with the Alabama Secretary of State. If the name of this entity becomes a substantive issue, then several legal questions might arise that are not now in dispute. If the correct name of the entity that employed the Plaintiff becomes disputed, and it proves the case that this entity registered with the Alabama Secretary of State under the wrong name, then there arises the question of what is the proper name of that entity for purposes of naming that entity in a suit brought in a Federal Court sitting in Alabama. Admittedly, these are arcane

issues not likely to arise, but even the remote possibility that they might is grounds for allowing the amendment and thus tying down for certain, the correct identity of the party who employed the Plaintiff. Such constitutes good cause for the Court to allow the amendment.

### IV. Conclusion.

Plaintiff's counsel misread the intent of the Court's Scheduling Order. Although the way Plaintiff's counsel read the order is not totally unreasonable, the more careful and circumspect reading of the language would have been as the Court intended – that is, that the April 24th cutoff date applies to all amendments and not just amendments adding new parties. Nevertheless, because of a good faith mistake, Plaintiff now has an amendment before the Court, filed after the cutoff date, and is seeking leave of the Court to allow the amendment. If the amendment added new substantive allegations, modified any legal theory of the original Complaint, or asserted new causes of action, then Plaintiff agrees that the Court ought not to allow it. This amendment, however, does none of these things. This amendment merely correct a clerical error. No prejudice, expense, delay or harm will come to any Defendant if the Court allows the amendment. There is no good reason not to allow the amendment and plenty of good reasons for the Court to grant Plaintiff leave to amend belatedly.

Finally, the undersigned counsel for the Plaintiff humbly apologizes to the Court for his role in sewing the confusion caused by this belated attempt to amend. The undersigned simply erred in how he interpreted the deadline imposed by the Order. The undersigned submits, however, that it would serve no good end to disallow the

amendment now on the table. In fact, not allowing the amendment would work against the spirit and intent of the Federal Rules of Civil Procedure. Therefore, Plaintiff urges the Court to grant him leave to amend and to allow the proposed amendment.

/s/ John I. Cottle III
John I. Cottle III (COT004)
Attorney for Plaintiff

OF COUNSEL:
Bowles & Cottle
Attorneys at Law
P.O. Box 780397
2 South Dubois Avenue
Tallassee, Alabama 36078
(334) 283-6548
Fax: (334) 283-5366
(Email) BowlesandCottle@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing on Warren B. Lightfoot, Jr., Esquire, Maynard, Cooper & Gale, P.C., 1901 Sixth Avenue North, 2400 AmSouth/Harbert Plaza, Birmingham, Alabama 35203-2618, attorney for Defendant, by mailing a copy thereof, postage prepaid, to him at his property mailing address on this the 5th day of June, 2006.

_____
Of Counsel

STATE OF ALABAMA

COUNTY OF ELMORE

## **AFFIDAVIT OF JOHN I. COTTLE III**

My name is John I. Cottle III. I am a practicing attorney in Tallassee, Elmore County, Alabama, and have been continuously and actively engaged in the practice of law for over twenty-five years. I represent the Plaintiff, Victor Smith, in the case of Victor Smith v. Euro-Pro Operating L.L.C., et al., Case Number 3:05-cv-1186-MEF. I make this Affidavit in support of a Motion for Leave to Amend a Complaint filed in this case after the deadline imposed by the Court's Scheduling Order.

On December 19, 2005, I filed a Complaint on behalf of Victor Smith alleging employment discrimination. I named as Defendants to that suit, Euro-Pro Operating, L.L.C., Euro-Pro Management Co. Corp., and Stanpro-EP Corp. In the Complaint, I set forth that I was naming these three Defendants because I was uncertain as to which Defendant was actually the Plaintiff's employer.

On or about January 9, 2006, Warren B. Lightfoot, Jr., filed an Answer to the Complaint on behalf of Euro-Pro Operating, L.L.C., Euro-Pro Management Services, Inc., and STANRO-EP Corp.[1] Mr. Lightfoot's Answer admitted that Euro-Pro Management Services, Inc. was the employer of the Plaintiff at the time of the alleged discrimination and that Euro-Pro Management Services, Inc., was one and the same as the entity identified in the Complaint as Euro-Pro Management Co. Corp.

---

[1] This Defendant is referred to in the Complaint as "Stanpro-EP Corp." The Answer refers to this party as "STANRO-EP Corp." This discrepancy is immaterial as the parties now agree that this entity was not the Plaintiff's employer at the time of the alleged discrimination.

On February 8, 2006, this Court entered a Uniform Scheduling Order. Section 4 of that Order provides as follows:

> Any Motions to amend the pleadings and to add parties shall be filed on or before April 24, 2006.

I interpreted this section to mean that only amendments to the pleadings seeking to add parties were to be filed on or before April 24, 2006. When I calendared the cutoff dates of the Scheduling Order on my calendar, I noted that the cutoff date for adding parties to this action was April 24, 2006. Rightly or wrongly, I did not read this Order as imposing an absolute cutoff to all amendments to the Complaint. Likewise, I did not indicate on my calendar that April 24, 2006, was an absolute cutoff for all amendments.

When I reviewed the Defendant's Answer, I noticed the discrepancy between the Complaint and Answer regarding the name of the entity that the Answer acknowledged was the Plaintiff's employer. Upon reviewing the Answer, I checked the website of the Alabama Secretary of State to see if an entity by the name of Euro-Pro Management Services, Inc., was listed as a corporation qualified to do business in Alabama. There is no listing on the Alabama Secretary of State's website of a corporation named "Euro-Pro Management Services, Inc." There is a listing on that site, however, for a company identified as Euro-Pro Management Co. Corp.

When I initially considered the discrepancy over the corporate name, I determined to seek discovery on the issue prior to amending the Complaint. It was clear to me that any amendment addressing this issue would be simply an amendment to correct a misnomer and not an amendment adding a new party. Because I had read the April 24, 2006, deadline in the Court's Scheduling Order as pertaining only to amendments that added new parties to the litigation, I did not think it was essential to immediately seek

discovery on this issue. The discovery cutoff under the Scheduling Order was not until February 8, 2007. I was extremely busy at the time the Defendants' Answer came in (I had two jury cases that tried during the month of January 2006, and a third that, after much pretrial preparation, was continued) and made the decision to put off commencement of discovery. Again, it did not occur to me that there would ever be a problem amending the Complaint to straighten out what was essentially a clerical error, as such an amendment would not add parties or make new claims.

On May 24, 2006, the Defendant's counsel took the deposition of the Plaintiff, Victor Smith. Subsequent to that deposition, I began reviewing the pleadings and preparing my initial discovery to the Defendants. At that time, and upon further reflection on the issue of the proper name of the employer Defendant, I came to the conclusion that discovery on this issue was not necessary because the Defendants had stipulated by way of their Answer that the Plaintiff's employer was Euro-Pro Management Services, Inc. I therefore decided to forego discovery on this issue and accept the allegations of the Answer concerning the proper name of the party who employed the Plaintiff. At that point, I filed the proposed Amendment, together with the Motion for Leave to Amend, that is now before the Court.

The amendment now before the Court does nothing more than correct a misnomer. It does not add new parties nor does it make new claims. I did not feel at the time I filed the Amendment, that it was barred by the April 24, 2006, deadline of the Scheduling Order. After reading this Court's Order of June 1, 2006, addressing my Request for Leave to Amend, and after rereading the Scheduling Order, I now understand that the Court intended for Section 4 of the Scheduling Order to apply to all amendments

– even amendments that do not add new parties to the litigation. I did not intentionally misread the Court's Scheduling Order or deliberately ignore the April 24th cutoff date. While my reading of the paragraph 4 of the Scheduling Order is clearly not what the Court intended, I do not believe my reading of the Order is frivolous or completely unfounded. It was simply a good faith mistake.

    I have not, at any time, failed to pursue this case diligently. I have commenced discovery upon a schedule that will allow me to complete discovery far in advance of the discovery cutoff deadline and will allow me to timely meet all other deadlines and cutoff dates set forth in the Scheduling Order. My misinterpretation of the language of Section 4 of the Scheduling Order is my fault and my responsibility, and I apologize to the Court for the confusion I have caused. I believe, however, that disallowing the amendment in this case would be counterproductive to the cause of justice for all the reasons I set forth in my brief. In this specific instance, there will be absolutely no prejudice or harm done to anyone by allowing the amendment now before the Court. There will be no added delay or expense caused anyone by this amendment. Again, this amendment is only made to correct what was essentially a clerical mistake. The parties are now in full agreement as to the correct name of the Defendant being sued and this has never been an issue in this case. The Amendment was filed merely to clear up a matter that has already been basically stipulated to between the parties. I therefore believe there exists good cause for the Court to make an exception to the Scheduling Order and allow this Amendment.

                                                                       _____
                                                                       JOHN I. COTTLE III

SWORN TO AND SUBSCRIBED before me this 5th day of June, 2006.

*Martha S. Beasley*
NOTARY PUBLIC

Martha S. Beasley
Notary Public, Alabama State at Large
My commission expires December 2, 2007