IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

RECEIVED

2006 MAY 30  A  9: 33

|  |  |  |
|---|---|---|
| VICTOR SMITH, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Case No. 3:05-cv-1186-MEF** |
| | ) | |
| EURO-PRO MANAGEMENT | ) | **DEMAND FOR JURY TRIAL** |
| SERVICES, INC., | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Comes now the Plaintiff, Victor Smith, and amends his Complaint by deleting as party Defendants, Euro-Pro Operating, L.L.C., and STANRO-EP Corp., and by substituting "Euro-Pro Management Services, Inc.," for "Euro-Pro Management Company Corp." wherever the same appears in the Complaint. As amended, the Complaint will read as follows:

## COMPLAINT

1.      This case arises under the Civil Rights Act of 1964 (42 U.S.C. §2000e-2) and 42 U.S.C. §1981. Jurisdiction is conferred upon this Court by 28 U.S.C. §1331, 28 U.S.C. §1343, and 42 U.S.C. §2000e – 5(f).

2.      Plaintiff Victor Smith is an African American male citizen of the United States residing in Montgomery, Alabama.

3.      Defendant Euro-Pro Management Services, Inc., is a foreign corporation doing business in the State of Alabama. Defendant operated the Euro-Pro Plant in Opelika, Alabama at which the Plaintiff was employed from on or about December 1,

2003 until on or about December 1, 2004, and served as Defendant's employer during this period.

4.      On or about December 1, 2003, Plaintiff was hired by Defendant to work in the Defendant's plant in Opelika, Alabama, in the Eastern Division of the Middle District of Alabama, as a lab technician. Plaintiff began employment with the Defendant on that day and remained an employee of the Defendant until on or about December 1, 2004 at which time Plaintiff's employment was terminated.

5.      After Plaintiff was initially hired by the Defendant, he performed the duties of lab technician at a very high level of satisfaction. Plaintiff was diligent and prompt in carrying out all assignments given to him by his employer and he carried out those assignments as directed and in a manner satisfactory to the Defendant.

6.      Later during his period of employment with the Defendant, Plaintiff was assigned to the Life Testing Department and instructed to build an automated testing system for a steam cleaner. Plaintiff was given no budget for the construction of this testing system, nor any guidance as to the amount of time and money he was expected to spend in constructing such a system. Even though the Plaintiff had no experience in designing and constructing a testing system of this type (and informed Defendant of this fact) Plaintiff agreed to attempt the assignment.

7.      Plaintiff undertook to complete the assignment given him by the Defendant and did in fact design and construct the testing device. The device was then placed in use for its intended purpose.

8.      After constructing the steam cleaner testing device, the Plaintiff went on vacation. Plaintiff returned from vacation on or about December 1, 2004. At that time he

was summoned to the office of the Defendant's manager, Terry Robertson. Robertson informed the Plaintiff that he had taken too long to construct the testing device and that the testing device had cost too much to produce. Robertson informed Plaintiff at that point that the Plaintiff's employment was being terminated based upon Plaintiff's job performance in constructing the testing device.

9.      During the time Plaintiff was employed with Defendant, the Defendant learned that the Plaintiff had occasionally telephoned a white co-employee. Upon learning this information, the Defendant initiated a sexual harassment investigation against the Plaintiff, even though the white female subject of the telephone calls never alleged facts against the Plaintiff which would have amounted to sexual harassment. The sexual harassment investigation was opened against the Plaintiff solely because of the Plaintiff's race and was designed to threaten and intimidate the Plaintiff so as to cause the Plaintiff to resign his employment with the Defendant.

10.      During the time Plaintiff was employed with Defendant, there were numerous racial jokes made by persons in management position with the Defendant in the presence of the Plaintiff that portrayed African Americans in a derogatory light.

11.      On information and belief, Plaintiff avers that after he was terminated, a white employee was hired to replace him.

12.      Immediately after Plaintiff was terminated from employment by the Defendant, Plaintiff filed charges of employment discrimination with the Equal Employment Opportunity Commission. Said charges were filed on or about December 1, 2004.

13.     On September 28, 2005, Plaintiff received a "Notice of Right to Sue" from the Birmingham District Office of the Equal Employment Opportunity Commission.

## COUNT I
## 42 U.S.C. §§2000e *et seq.*

14.     Plaintiff adopts and incorporates herein the allegations of paragraphs 1-13 above.

15.     Defendant denied equal employment opportunities to the Plaintiff solely due to the Plaintiff's race.

16.     The reason given by Defendant for Plaintiff's discharge was a pretext for unlawful discrimination against the Plaintiff.

17.     Defendant committed an unlawful, discriminatory employment practice against Plaintiff, a member of a racially protected class.

18.     The Defendant's actions in terminating the Plaintiff's employment constitute unlawful discrimination against the Plaintiff in violation of 42 U.S.C. §2000e-2.

19.     As a result of Defendant's policies, practices and actions, the Plaintiff was deprived of his job and is now being deprived of income in the form of wages and prospective retirement benefits and other fringe benefits due solely because of his race.

20.     As a proximate result of Defendant's discriminatory and wrongful acts, Plaintiff has suffered emotional distress, humiliation, embarrassment, and mental anguish.

WHEREFORE, Plaintiff respectfully prays that this honorable court will grant him the following relief:

(a)    That the Court will find the conduct engaged in by the Defendant to be in violation of the Plaintiff's rights.

(b)    That the Court will enjoin the Defendant from engaging in such conduct in the future.

(c)    That the Court will award Plaintiff the amount of compensation that the Plaintiff would have earned as an employee of the Defendant had he not been wrongfully discharged.

(d)    That the Court will award Plaintiff back salary and fringe benefits and front salary and benefits accrued.

(e)    That the Court will award Plaintiff damages for mental anguish and emotional distress.

(f)    That the Court will award Plaintiff punitive damages for the Defendant's intentional wrongful conduct.

(g)    That the Court will award Plaintiff costs and attorney's fees.

(h)    That the Court will award Plaintiff such other, further and different relief to which the Plaintiff is entitled, the premises considered.

## COUNT II
### 42 U.S.C. §1981

21.    Plaintiff adopts and incorporates herein the allegations of paragraphs 1-20 above.

22.    The Defendant discharged the Plaintiff on the basis of the Plaintiff's race.

23.    The effect of the Defendant's policies, practices and conduct as described hereinabove acted to deprive Plaintiff of equal employment opportunities and to deprive Plaintiff of the same rights enjoyed by white citizens.

24.    Defendant unlawfully discriminated against Plaintiff in violation of 42 U.S.C. §1981.

WHEREFORE, Plaintiff prays that the Court will grant him the following relief:

(a)    That the Court will find the conduct engaged in by the Defendant to be in violation of Plaintiff's rights.

(b)    That the Court will enjoin Defendant from engaging in such conduct in the future.

(c)    That the Court will award Plaintiff the amount of compensation that the Plaintiff would have earned as an employee of the Defendant had he not been wrongfully discharged.

(d)    That the Court will award Plaintiff back salary and fringe benefits and front salary and benefits accrued.

(e)    That the Court will award Plaintiff damages for mental anguish and emotional distress.

(f)    That the Court will award Plaintiff punitive damages for the Defendant's intentional wrongful conduct.

(g)    That the Court will award Plaintiff costs and attorney's fees.

(h)    That the Court will award Plaintiff such other, further and different relief to which the Plaintiff is entitled, the premises considered.

John I. Cottle III (COT004)
Attorney for Plaintiff

OF COUNSEL:
Bowles & Cottle
Attorneys at Law
P.O. Box 780397
2 South Dubois Avenue
Tallassee, Alabama 36078
(334) 283-6548
Fax: (334) 283-5366
(Email) BowlesandCottle@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing on Warren B. Lightfoot, Jr., Esquire, Maynard, Cooper & Gale, P.C., 1901 Sixth Avenue North, 2400 AmSouth/Harbert Plaza, Birmingham, Alabama 35203-2618, attorney for Defendant, by mailing a copy thereof, postage prepaid, to him at his property mailing address on this the 26th day of May, 2006.

Of Counsel