IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| VICTOR SMITH, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CASE NO: 3:05 CV 1186 |
| ) | |
| EURO-PRO OPERATING, L.L.C., ) | |
| EURO-PRO MANAGEMENT COMPANY ) | |
| CORP. and STANRO-EP CORP., ) | |
| ) | |
|     **Defendants.** ) | |

## DEFENDANT'S REPLY BRIEF

Defendant Euro-Pro Management Services, Inc. ("Euro-Pro" or the "Company"), submits the following brief in reply to Plaintiff Victor Smith's Response to Defendant's Motion for Summary Judgment.

### I.    Plaintiff's brief contains inaccurate and misleading information.[1]

Plaintiff's brief contains numerous inaccuracies, primarily centered around Euro-Pro's investigation into Ashley Sheffield's complaint of Plaintiff's behavior, Plaintiff's elevation to the Lab Technician for Life Cycle Testing position and Plaintiff's insubordinate conduct with Hudnall.

With regard to the complaint about Plaintiff's conduct, Plaintiff's brief (1) states that "Hudnall concedes that neither Sheffield nor Rhodes ever made a sexual harassment complaint against the Plaintiff," (2) states that Euro-Pro confronted Allison Rhodes about the Plaintiff's conduct "in the absence of any complaint by anyone," and (3) asks "why would Hudnall ….take

---

[1] Plaintiff has failed to comply with the requirements of this Court's February 8, 2006 Order by failing to support many of his factual allegations and points of discussion with a citation to the record and with citations which contain references to the lines in the depositions, not just the page numbers. Under the terms of that Order, Plaintiff's opposition should not even be considered by this Court.

it upon himself to confront Rhodes and ask her about Plaintiff inquiring as to whether she dated blacks?"[2] These statements are flatly inaccurate. Hudnall clearly stated in deposition that Euro-Pro fielded a complaint from Ashley Sheffield relating to Plaintiff calling her during working hours at home.[3] Hudnall described that Euro-Pro was faced with a situation where "a single male [was] calling a single female and then the single female [was] feeling she has to block the call…in this day and age, anything can constitute sexual harassment."[4] Hudnall continued:

> After discussing it with our general-HR person, she felt it was best that if-we at least cover that base to make sure there was no sexual harassment. We really felt like there was none but in order to cover ourselves we thought it was best to at least touch on that. The gist of our conversation-the gist of mine and Chad's conversation with Victor was that he called when he shouldn't have and to not do anything to put himself in the appearance of harassing somebody.[5]

In addition, Euro-Pro did not just begin asking Allison Rhodes questions about Plaintiff for no reason, as Plaintiff's brief disingenuously implies. Hudnall clearly states that "at some point during the discussions with Ashley [Sheffield] about the telephone call, the comment was made to me that Victor had asked Allison and Ashley if either one of them would ever date a black guy."[6] Hudnall, reasonably, followed up on that information by asking Allison Rhodes if she had been offended or felt harassed by such a statement.[7] Therefore, Plaintiff's allegations that no complaint was ever made and that Euro-Pro was inappropriately asking questions are misleading and reckless.

With regard to Plaintiff's elevation to the Lab Technician position, Plaintiff questions and states as follows:

---

[2] Plaintiff's Brief P. 19-20.
[3] Hudnall Depo. P. 93, L 23-P. 95, L 1.
[4] Hudnall Depo. P. 95.
[5] Hudnall Depo. P. 95, L 15-P. 96, L 3.
[6] Hudnall Depo. P. 140, L 19-23.
[7] Allison Rhodes Lott Declaration.

>Why did Euro-Pro, shortly after these events, assign Plaintiff to a project he was not fully qualified for by training or experience, fail to provide him with a budget, fail to provide him with a reasonable schematic of the machine he was supposed to construct, and fail to provide him with adequate backup support? A strong inference can be drawn from these facts that someone in Euro-Pro management objected to the notion of a black male employee dating a white female employee, and thereafter set out to get rid of the offender.[8]

First, Plaintiff admitted that he was excited about the opportunity to become the Lab Technician in the Life Cycle Testing Division and felt that, based on his skill set and past experience, the job was a challenge that he wanted to take on and understood as an opportunity to grow and advance in the Company.[9] Second, Plaintiff has admitted that Hudnall, who was his supervisor and who had gotten a similar opportunity to advance earlier in his career, was always available to him and that Chad Reese and Bryan McGee, degreed Engineers, were available to assist him at all times.[10] Furthermore, Plaintiff's suggestion that someone in Euro-Pro management "objected to the notion of a black male employee dating a white female employee and thereinafter set out to get rid of [him]" is fabricated out of the whole cloth. Plaintiff, of course, does not cite to the record in making such a statement and provides no factual basis whatsoever for such a completely reckless statement.

With regard to Plaintiff's insubordinate conduct, Plaintiff's perhaps most egregious error is in the Argument section of his brief, in which Plaintiff "denies" receiving a call from Hudnall during his vacation.[11] Counsel for Defendant assumes that this was an unintentional mistake in the Argument section because Plaintiff accurately states in the Facts section of the brief that "[p]laintiff does not recall ever receiving any call from Hudnall during his vacation."[12] Regardless of Plaintiff's intent, the record is perfectly clear and undisputed that Hudnall had a

---

[8] Plaintiff's Brief P. 20.
[9] Smith Depo. P. 68, L 3-14.
[10] Smith Depo. P. 74, L 15-p. 76, L 23; P. 183, L 22-P. 186, L 17.
[11] Plaintiff's Brief P. 19.
[12] Plaintiff's Brief P. 5.

conversation with Plaintiff while he was on vacation and, in express contradiction to Hudnall's instruction, Plaintiff failed to remain available to assist Hudnall.[13]  The evidence is clear that Plaintiff does not <u>remember</u> the conversation, not that Plaintiff denies that the conversation occurred.

**II.      Plaintiff's prima facie case fails because he was not replaced by anyone.**

Plaintiff's prima facie case fails because he was not replaced by <u>anyone</u>, including by anyone outside his protected class.  Plaintiff argues, based upon *Rollins v. TechSouth, Inc.*, 833 F. 2d 1525 (11th Cir. 1987), that he was replaced by Jeff Garrison, a white Engineer who was hired by Euro-Pro and briefly assisted Plaintiff's supervisor, Ralph Hudnall, in completing the project that Plaintiff had totally failed to complete.  *Rollins* is distinguishable from this case because, in *Rollins*, the plaintiff (Rollins) actually taught her replacement (Richardson) how to do her job, Richardson actually took over Rollins' duties after Rollins was terminated and Rollins submitted evidence of a copy of the defendant's advertisement announcing the opening ultimately filled by Richardson.  *Rollins,* 833 F. 2d at 1529.  In this case, by contrast, Garrison was a degreed Engineer and was hired to perform degreed engineering work, not to replace Plaintiff as a Lab Technician, which required no engineering degree.  The evidence is undisputed that Euro-Pro has never replaced the Lab Technician position that was eliminated when Plaintiff's employment was terminated.  Moreover, the evidence demonstrates that Garrison simply assisted Hudnall in completing the one project that Plaintiff had left unfinished, not that he ever performed any of the other functions that Plaintiff was charged with performing as a Lab Technician.

The Eleventh Circuit explained the standard clearly in *Hawkins v. Ceco Corp.*, 883 F. 2d 977 (11th Cir. 1989).  The Court first stated that "[w]here the employee's position is clearly

---

[13] Hudnall Depo. P. 129, L 16-18; Hudnall Depo. P. 77, L 22-P. 178, L 21.

delineated and responsibilities are well defined, the Court should focus <u>on the person that physically replaced the employee</u> or consider <u>whether that job title was actually filled</u>."

*Hawkins*, 883 F. 2d at 982 (emphasis added). The Court continues:

> Replacement by a non-minority is the fourth element of a *prima facie* case because it is evidence of preferential treatment for non-minorities in the workplace. Where the worker assumed no additional benefits by performing some of the discharged employee's duties, there is no indication of preferential treatment.

*Hawkins*, 883 F. 2d at 983.

In this case, it is undisputed that Jeff Garrison did not physically replace Plaintiff and that Euro-Pro did not fill the job title with Jeff Garrison or with anyone else. Furthermore, there is no evidence that Garrison received additional benefits by briefly assisting in the completion of one of Plaintiff's projects, and there is no evidence of preferential treatment for non-minorities in Euro-Pro's workplace. For all of those reasons, Plaintiff has completely failed to demonstrate that anyone, much less anyone outside the protected class, replaced him when he was terminated. Accordingly, Euro-Pro is entitled to summary judgment on all of Plaintiff's claims.

**III.     Plaintiff has failed to demonstrate any racial animus or evidence of pretext.**

     **A.     Plaintiff has shown no racial animus.**

Plaintiff has completely failed to demonstrate that Euro-Pro was motivated by racial animus in its decision to terminate his employment. In short, not only did Plaintiff completely fail to design a Steam Cleaner Testing fixture that worked well (or in a timely manner), he also was insubordinate to Hudnall when Hudnall was trying to get the fixture working while Plaintiff was on vacation. Primarily for those reasons, Terry Robertson made the good faith decision to terminate Plaintiff's employment for unacceptable performance. There is no evidence that Terry Robertson has ever used racially derogatory language, discriminated against Plaintiff on the basis

5

of race or discriminated against any other employee at any time on the basis of race. In fact, Plaintiff admitted that Robertson always treated him with respect.

Plaintiff's attempt to demonstrate racial animus relies completely on one alleged stray word by Hudnall, who was not in any way involved in the termination decision. Even assuming Hudnall's alleged use of the "n" word as evidence of racial animus (which Euro-Pro vehemently denies that it is), <u>Plaintiff has not one shred of additional evidence of racial animus</u>.

Hudnall's comment does not suggest racial animus by Euro-Pro for numerous reasons, in addition to the crucial fact that he was not in any way involved in the termination decision. First, Hudnall's alleged use of the word was not intended as a racial epithet; Hudnall was (allegedly) merely repeating the entirety of a <u>comedy</u> sketch in a TV show that the two men discussed together on occasion at work. Second, the word was in no way directed at Plaintiff or used in the derogatory way. Third, there is absolutely no evidence that it was proximate in time to the termination decision. Fourth, Plaintiff, upon allegedly hearing the comment, complained to absolutely no one at Euro-Pro and did not even tell Hudnall that he found the recounting of the sketch to be offensive. Fifth, Plaintiff admitted that Hudnall never made any other racial statements to him or anybody else, otherwise always treated him with respect and, on one occasion, had invited Plaintiff to his house to use his shower prior to a Company Christmas party.

**B.  Plaintiff has shown no evidence of pretext.**

Plaintiff attempts to demonstrate pretext by showing that Euro-Pro's reasons for termination are not credible and by arguing that an isolated stray comment alone can constitute circumstantial evidence supporting an inference of discrimination in the Eleventh Circuit. Plaintiff fails to undermine Euro-Pro's reasons. Moreover, as set out below, an isolated

6

comment by a decision maker (much less one by a non-decision maker) in the absence of additional evidence of pretext, does not support an inference of discrimination in the Eleventh Circuit.

With regard to the reasons for termination, Plaintiff attempts to address each of them one by one and confuse the facts relating to each one of them. Euro-Pro, in its initial brief, has set out the basis for each of Plaintiff's performance problems, and some of those problems, such as Plaintiff's complete failure to keep his area as clean as was required of him by Euro-Pro, are both undisputed and difficult for Plaintiff to try to confuse. More importantly, however, it is undisputed that Plaintiff understood that it was of significant importance to the Company that the Steam Cleaner fixture be completed as quickly as possible (despite his missing the initial completion deadline at the end of July), that Plaintiff was insubordinate to Hudnall on the phone on November 22, 2005 while he was on vacation and that Plaintiff had still not completed the project as of his termination date of December 1, 2005 (four months after the scheduled completion date).[14] Based upon Plaintiff's failure to complete the project and based upon the "final straw" of his insubordination, Robertson made the good faith decision to terminate Plaintiff's employment for poor performance.[15] There is no shred of evidence that suggests that Robertson decision was not made in good faith or was made with racial animus toward Plaintiff.

Plaintiff cited *Ross v. Rhodes Furniture, Inc.*, 146 F. 3d 1286 (11th Cir. 1998) for the proposition that an isolated racial comment has been held to constitute circumstantial evidence supporting the inference of discrimination. *Ross,* however, is easily distinguished from the facts of this case. In *Ross*, the two supervisors who allegedly made isolated racial comments were decision makers in the termination of the Plaintiff's employment. *Ross,* 146 F. 3d at 1291. In

---

[14] Smith Depo. P. 101, L 22-P. 102, L3; Hudnall Depo. P. 120, L 16-18; Robertson Decl. ¶4.
[15] Robertson ¶7.

addition, the reason that the Eleventh Circuit in *Ross* reversed the summary judgment in favor of the defendant employer was because the plaintiff submitted fairly strong additional evidence (on top of the isolated racial comments) that one of the supervisors who made the decision to terminate the plaintiff had engaged in the same activity for which the plaintiff was fired.  *Ross,* 146 F. 3d at 1292.

Importantly, "[a]lthough a comment unrelated to a termination decision may *contribute* to a circumstantial case or pretext…it would usually not be sufficient absent some additional evidence supporting a finding of pretext.  *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F. 3d 1223 (11th Cir. 2002), *citing Rojas v. Fla.*, 285 F. 3d 1339, 1343 (11th Cir. 2002).  As the *Rojas* Court made clear:

> The *Ross* court, in fact, explicitly noted that the evidence relating to the discriminatory comments had to be 'read in conjunction with the entire record' and 'considered together with' the other evidence in the case.  Because the alleged comment was …an isolated comment, unrelated to the decision to fire Rojas, it, alone, is insufficient to establish a material fact on pretext.

*Rojas*, 285 F. 3d at 1343 (quoting *Ross*, 146 F. 3d at 1291-92).

This Eleventh Circuit standard relating to isolated comments is significant for two reasons.  First, it is significant because any isolated comment must be viewed in conjunction with the entire record and in the context of whether additional evidence exists on the pretext issue.  Second, it is significant because the Eleventh Circuit caselaw suggests that this standard applies where the comments are made by the decision makers.[16]  Obviously, as Euro-Pro has stated numerous times, the alleged stray racial word in this case was uttered by a non-decision maker.  Perhaps more importantly, Plaintiff has completely failed to demonstrate <u>any</u> additional evidence of pretext.

---

[16] Presumably, for a stray comment of a <u>non-decision maker</u> to constitute sufficient evidence of pretext, the additional evidence would have to be even stronger.

8

In *Scott*, *supra,* the plaintiff submitted evidence that her supervisor had made the statement "We'll burn his black ass" referring to the plaintiff and evidence that the defendant treated the plaintiff and a white co-worker who had allegedly engaged in the same inappropriate conduct as plaintiff differently in terms of discipline. *Scott,* 285 F. 3d at 1228-29. The Court, in *Scott,* found "no additional evidence that is even marginally persuasive on the issue of pretext" and that "[w]ithout additional persuasive evidence of pretext, [the supervisor's] statement standing alone is insufficient to create an issue of fact on pretext." *Scott,* 295 F. 3d at 1229. Accordingly, Plaintiff's evidence in this case of an alleged stray word, made by a non-decision maker, without any additional evidence that is even marginally persuasive, is wholly insufficient to demonstrate pretext. As Euro-Pro stated in its initial brief, it is a completely contrived effort to demonstrate pretext where none exists.

**IV.     Conclusion.**

For all of the reasons set out in its initial brief and herein, Euro-Pro states that it is entitled to judgment as a matter of law and that no genuine issue of material fact exists. Accordingly, Euro-Pro respectfully requests that this Court grant summary judgment in its favor on all of Victor Smith's claims in this lawsuit.

          */s/ Warren B. Lightfoot, Jr.*
          _____
          Warren B. Lightfoot, Jr.
          Attorney for Defendant
          Euro-Pro Management Services, Inc.

**OF COUNSEL:**
MAYNARD, COOPER & GALE, P.C.
2400 AmSouth/Harbert Plaza
1901 Sixth Avenue North
Birmingham, Alabama  35203-4604
(205) 254-1000

## **CERTIFICATE OF SERVICE**

     I hereby certify that on December 8, 2006, a copy of the foregoing pleading was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

John I. Cottle, III
Bowles & Cottle
P.O. Box 780397
2 So. Dubois Avenue
Tallassee, Alabama  36078

                                              */s/ Warren B. Lightfoot, Jr.*
                                              _____
                                              OF COUNSEL